UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD THRONE individually, and on behalf of other members of the general public similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>CITICORP INVESTMENT SERVICES, INC.,<br><br>               Defendant. | CASE NO.: CV 07-113 ABC (RZx)<br><br>ORDER RE: PLAINTIFF THRONE'S MOTION TO CONSOLIDATE |

Pending before the Court is a Motion to Consolidate ("Motion"), filed by Plaintiff Chad Throne ("Throne") on December 17, 2007. Plaintiff Nicholas Tchikovani ("Tchikovani") filed an Opposition on December 26, 2007, and Plaintiff Throne filed a Reply on January 2, 2008. The Motion came on regularly for hearing on January 14, 2008. Upon consideration of the materials submitted by the parties, argument of counsel, and the case file, the Court hereby **GRANTS** Plaintiff Throne's Motion.

//

//

//

**I.   BACKGROUND**

Plaintiff Throne moves under Federal Rule of Civil Procedure 42(a) to consolidate two actions: <u>Throne v. Citicorp Investment Services</u>, Case No. CV-07-113 ("the *Throne* matter")[1], and <u>Tchikovani v. Citicorp Investment Services</u>, Case No. CV-07-3560 ("the *Tchikovani* matter"), collectively, the "Overtime Actions." Throne also requests that his counsel of record, Initiative Legal Group LLP ("Initiative") be appointed interim Lead Counsel.

The *Throne* matter was filed in Superior Court on November 17, 2006, and was removed to the United States District Court for the Central District of California on February 27, 2007. The Court issued a Scheduling Order on June 22, 2007, establishing dates for class certification and trial. The First Amended Complaint alleges seven causes of action under the Fair Labor Standards Act, the California Labor Code, and California Business and Professions Code § 17200, *et seq*. Throne seeks relief on behalf of "current and former securities brokers and broker trainees, or persons with similar titles and/or similar job duties, who worked for Defendant in the Sate of California at any time during the period from four years prior to the filing of this Complaint to final judgment." The record indicates that substantial discovery has taken place and is under way in the *Throne* matter, that notice of the matter was sent to putative class members, that the parties engaged in a mediation in October 2007, and that they expect to complete settlement based on the mediator's proposal and submit it for the Court's approval. (Mot. 3:23-4:17.)

---

[1] In this class action, the original class representative was Denise Padovani. On July 24, 2007, the Court granted Plaintiff's request to file a First Amended Complaint substituting the current class representative, Chad Throne, for Padovani.

1  The *Tchikovani* matter was filed on April 19, 2007, in Superior
2  Court.  The original complaint contained five causes of action under
3  the Fair Labor Standards Act, the California Labor Code, and
4  California Business and Professions Code § 17200, *et seq.*, but no
5  class allegations.  On June 1, 2007, Tchikovani filed an amended
6  complaint asserting class allegations and stating seven causes of
7  action: six class-wide claims under the California Labor Code and the
8  California Business and Professions Code § 17200, *et seq.*, and
9  Tchikovani's individual claim for wrongful termination.  Defendant
10 then removed the *Tchikovani* matter to the United States District Court
11 for the Northern District of California.  On October 19, 2007, the
12 *Tchikovani* matter was transferred to the Central District, and on
13 November 28, 2007, it was assigned to this Court.  (Mot. 4:20-5:18.)

**II.  ANALYSIS**

**A.  Consolidation of the Overtime Cases**

Consolidation of cases is governed by Federal Rule of Civil Procedure 42, which states: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  In deciding whether to consolidate actions, the court should balance the efficiency of consolidation against the possible inconvenience, delay or prejudice to the parties.  Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982).  The district court has broad discretion to make this determination, see Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of California, 877 F.2d 777, 777 (9th Cir. 1989), and does not need the parties' consent

to order consolidation.  <u>Connecticut General Life Ins. Co. v. Sun Life Assur. Co. of Canada</u>, 210 F.3d 771, 774 (7th Cir. 2000) (stating, "a court can in appropriate circumstances consolidate cases before it . . . whether or not the parties want the cases consolidated.")

Consolidation of the Overtime Actions is appropriate.  First, both matters involve common questions of law and fact, and seek the same relief.  Specifically, each complaint contains essentially identical allegations that Defendant violated California and federal law by failing to pay all compensation to putative class members.  The gravamen of both cases is that Defendant misclassified the putative class and withheld earnings.  Throne also notes – and Tchikovani does not dispute – that both classes, though defined with different language, are in fact the same. (Mot. fn. 4.)  Indeed, Tchikovani states that he does not oppose consolidation of the cases.  Accordingly, the Court will order the cases consolidated.

**B.   Appointment of Lead Counsel**

Federal Rule of Civil Procedure 23(g)(1)(C) establishes guidelines governing the appointment of lead counsel.  The rule states that, in appointing class counsel, the court:

(A) must consider:

    (i) the work counsel has done in identifying or investigating potential claims in the action;

    (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

    (iii) counsel's knowledge of the applicable law; and

    (iv) the resources that counsel will commit to representing the class;

4

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Selection of "lead counsel is a duty often left to the court if the parties cannot decide amongst themselves. [] Courts should consider the following factors when appointing lead counsel: experience; prior success record; the number, size, and extent of involvement of represented litigants; the advanced stage of proceedings in a particular suit; and the nature of the causes of action alleged." In re Cardinal Health, Inc. ERISA Litigation, 225 F.R.D. 552, 554 (S.D. Ohio, 2005) citing Howard B. Newberg and Alba Conte, Newberg on Class Actions § 9.31 at 9-82, § 9.35 at 9-95, and § 9-35 at 9-97 (3d ed. 1992). Here, the parties do not agree on who should be lead counsel.[2] Thus, the Court will select lead counsel.

Having considered the relevant factors, for the reasons stated below, the Court selects Initiative as lead counsel. First, it is

---

[2] Tchikovani objects to Initiative's appointment as lead counsel. However, Tchikovani's counsel Gould and Associates has not yet affirmatively moved to be appointed lead counsel itself; rather, Gould and Associates merely avers that it is competent to be lead counsel and would move to be appointed if the Court declines to appoint Initiative.

5

clear that Initiative has performed substantial work investigating the claims, identifying class members, conducting discovery, and prosecuting the *Throne* matter. (See Cho Decl. ¶ 6.) As a result, the matter has progressed significantly. Indeed, the litigation is so advanced that the parties are finalizing settlement. By contrast, the *Tchikovani* matter became a class action nearly seven months after the *Throne* matter was filed, and is still subject to the Rule 26 discovery stay. Thus, the *Throne* matter is at a far more advanced stage of litigation than the *Tchikovani* matter is, and this is the result of Initiative's substantial work.

Initiative also presented evidence of its extensive experience in wage and hour litigation, has demonstrated knowledge of the applicable law, and will devote sufficient resources to prosecuting this case. (See Primo Decl. ¶¶ 6, 7.) Specifically, Initiative has experience prosecuting financial services class actions and individual actions, and broker misclassification actions in particular, and recently prevailed on appeal on an important issue in a labor and employment case. (Id.) Initiative has also been successful in obtaining certification of wage and hour class actions and bringing them to settlement. (Id.) This experience also demonstrates Initiative's knowledge of the applicable law. Indeed, Tchikovani does not contest the factual foundation of Initiative's showing. The Court therefore finds that Initiative has performed substantial work on the *Throne* matter, and has demonstrated sufficient experience, success, knowledge, and commitment to be appointed lead counsel in the Overtime Actions.

Tchikovani does argue, however, that Initiative's conduct in this case in particular renders it ineligible for appointment as lead

counsel. None of Tchikovani's arguments has merit.

First, Tchikovani argues that Initiative's conduct in connection with the pending settlement in the *Throne* matter disqualifies Initiative from serving as lead counsel. Specifically, Tchikovani argues that Initiative's refusal to allow Tchikovani to participate in the mediation of the *Throne* matter, or to disclose the settlement terms to Tchikovani's counsel, violates Initiative's duty as lead counsel to keep other counsel and putative class members informed of the status of settlement negotiations. However, this argument puts the cart before the horse: such duties belong to lead counsel, and prior to this Order, the cases had not been consolidated and lead counsel had not been appointed; thus, no one bore those duties in relation to this case. Therefore, Initiative cannot be faulted for not inviting Tchikovani to participate in the *Throne* mediation or for not keeping Tchikovani informed of the mediation because Initiative was not lead counsel. Furthermore, insofar as the terms of the *Throne* settlement are confidential, Initiative was not at liberty to disclose them to Tchikovani prior to consolidation.

Relatedly, Tchikovani intimates that because both Initiative and Defense counsel are keeping the status of the *Throne* mediation confidential, there must be some agreement between Initiative and Defendant that renders Initiative untrustworthy. (Opp'n 5:24-7:6.) The Court finds this maintenance of confidentiality neither "odd," nor "suspect," nor "troubling." (Id. at 6:10-11, 6:15-18.) To the contrary, Throne states that the pending settlement, like most class action settlements, is confidential, and that the settlement terms will be disclosed to Tchikovani and his counsel upon the consolidation of the cases and if Initiative is appointed lead counsel. The Court

7

agrees that Initiative has no obligation to disclose those terms to Tchikovani prior to its appointment as lead counsel.

Second, Tchikovani argues that Initiative failed to properly serve this motion because it was not served on co-counsel Richard Jones and Mark Thierman. Tchikovani contends that this alleged failure to properly serve the motion calls into question Initiative's "ability to adequately perform its administrative duties as lead counsel." (Opp'n 8:9-18.) However, F.R.C.P. 5 requires only that "papers must be served on every party"; it does not require service to be made on every attorney of record. Thus, when a party is represented by multiple attorneys, multiple service is not required. See Allen v. Pacific Bell, 212 F.Supp.2d 1180, 1190 (C.D. Cal. 2002) (so construing F.R.C.P. 5(a) and (b).) Initiative served this motion on Tchikovani's counsel, Mr. Gould. Accordingly, the motion was properly served, and the Court rejects Tchikovani's argument concerning Initiative's ability to administer the case.

Third, Tchikovani argues that Initiative failed to object, on behalf of the *Throne* class, to the settlement in a case entitled *Chan-Lanier v. Citigroup, Inc.*, Case No. CGC-05-445143, and therefore may have waived Throne's overtime, meal, and rest claims. Tchikovani argues that this demonstrates Initiative's inadequacy to represent the plaintiff class. However, the release language in *Chan-Lanier* (conspicuously absent from Tchikovani's brief but provided by Initiative) applies only to claims "arising out of or relating to Defendants' Personal Time Policies, Floating Holiday Schedules" and waiting time penalties related to those policies. (Reply 6:12-17.) Thus, the *Chan-Lanier* matter involves policies and practices not at issue in the Overtime Actions. Accordingly, Tchikovani's assertion

that Initiative might have waived any of the *Throne* class's claims by failing to object to the *Chan-Lanier* settlement is belied by the terms of the *Chan-Lanier* release.

Finally, Tchikovani argues that Initative violated the Rules of Professional Conduct of the State Bar of California, Rule 2-100A, because it sent at least one unsolicited letter to Plaintiff Tchikovani about the *Throne* matter, despite knowing that Tchikovani was represented in a similar lawsuit by counsel. It appears that the single communication that Initiative had with Tchikovani consisted of a letter that was part of a mailing of over 600 letters that Initiative sent to the *Throne* class members in August 2007. (Reply 7:25-29, fn. 4.) This conduct does not violate Rule 2-100A. Rule 2-100A states, "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer **in the matter**, unless the member has the consent of the other lawyer." (emphasis added.) By its own terms, Rule 2-100A applies to bar only communications from a lawyer representing a client in a matter, to a represented party <u>in the same matter</u>, <u>about the same matter</u>. Here, because the *Throne* matter and the *Tchikovani* matter were not the same matter in August 2007 when Initiative sent Tchikovani the letter, Initiative did not violate Rule 2-100A by sending the letter.

//
//
//
//
//

### III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff Throne's Motion and hereby **ORDERS** consolidation of the actions and **APPOINTS** Initiative Legal Group LLP Lead Counsel.

**IT IS SO ORDERED.**

**DATED:**     January 14, 2008

_____

**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**